## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SHEREE BUTLER,                          )
                                        )
      Plaintiff,                   )
                                        )    No. 11 CV 6692
    v.                             )
                                        )    Hon. Charles R. Norgle
FEDERAL DEPOSIT INSURANCE               )
CORPORATION, AS RECEIVER FOR            )
COLONIAL BANK, et al.,                  )
                                        )
      Defendants.                  )

### OPINION AND ORDER

Before the Court is Defendant Federal Deposit Insurance Corporation, as receiver for

Colonial Bank's (the "FDIC") motion for sanctions against Lloyd J. Brooks ("Brooks"), counsel

for Plaintiff Sheree Butler ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 11. For the

following reasons, the motion is granted pursuant to Rule 11 and 28 U.S.C. § 1927. Brooks is

ordered to pay sanctions in the amount of $24,586.00.

### I. BACKGROUND

Plaintiff, through her attorney Brooks, initiated this action for rescission and damages

against the FDIC on September 22, 2011. Plaintiff brought a single claim against the FDIC for

an alleged violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* Plaintiff

took no action against the FDIC for two years until she filed a motion for default against it on

September 30, 2013. Brooks presented the motion for default to the Court on October 18, 2013,

at which time the Court took the motion under advisement until the next hearing date, which the

Court set for November 19, 2013.

On October 22, 2013, the day after the Court's Order continuing the hearing on the motion for default was entered onto the docket, counsel for the FDIC filed an appearance. After reviewing the motion, counsel for the FDIC attempted to contact Brooks to discuss the case, but was unable to reach him. Counsel left a message and sent a follow-up email asking Brooks to contact her with respect to his motion for default. Counsel called again the next day and left another message, which Brooks failed to return. Counsel made an additional two to three phone calls to Brooks between October 23, 2013 and October 25, 2013, to no avail. Finally, on November 5, 2013, counsel for the FDIC sent Brooks a letter through email, requesting that he voluntarily dismiss the claim against the FDIC with prejudice. Counsel stated that dismissal was warranted because Plaintiff's claim lacked subject matter jurisdiction, was filed in the wrong venue, and Plaintiff improperly served the FDIC. Counsel further stated that "if Plaintiff does not agree to voluntarily dismiss said claim before FDIC-R files a motion to dismiss, FDIC-R will likely pursue Rule 11 sanctions against Plaintiff." Mem. in Supp. of Fed. Deposit Ins. Corp. as Receiver for Colonial Bank's Mot. for Sanctions Ex. A2.

Brooks failed to respond to counsel's Rule 11 letter. On November 18, 2013, in order to respond before the scheduled hearing, the FDIC filed its motion to deny Plaintiff's motion for default, to quash the purported service, and to dismiss the claim against it pursuant to Rules 12(b)(1), (2), (3), (5), and (6). At the scheduled status hearing on November 19, 2013, the FDIC presented its motion to the Court. Brooks failed to appear. On November 20, 2013, the Court granted the FDIC's motion, and denied Plaintiff's motion for default.

The FDIC filed the instant motion for sanctions against Brooks on January 21, 2014. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Pursuant to Rule 11, "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and that] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). "[T]he purpose of Rule 11 is to deter baseless filings in the district court." Cooney v. Casady, 735 F.3d 514, 523 (7th Cir. 2013) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)). It "establishes an objective test, and as [courts] have repeatedly observed, an 'empty head but a pure heart is no defense.'" U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore, 406 F.3d 465, 470 (7th Cir. 2005) (quoting Chambers v. Am. Trans. Air, Inc., 17 F.3d 998, 1006 (7th Cir. 1994)). "The decision to grant or deny a motion for Rule 11 sanctions is within the sound judgment of the district court." Cooney, 735 F.3d at 523.

### B. Safe Harbor Provision of Rule 11

As an initial matter, Brooks argues that the FDIC cannot seek sanctions against him because it failed to give him twenty-one days within which to withdraw or appropriately correct "the challenged paper, claim, defense, contention, or denial" as required by Rule 11's safe harbor provision. Fed. R. Civ. P. 11(c)(2). Specifically, counsel for the FDIC sent the Rule 11 letter to Brooks on November 5, 2013. Although Brooks attempts to challenge the validity of the letter as a "Rule 11" letter, the Court finds that the letter sufficiently apprises the reader of the FDIC's challenges to subject matter jurisdiction, venue, and service of process. In any event, the FDIC

filed its letter only thirteen days before it filed its motion to dismiss, and only fifteen days before the Court ruled dismissing the claim against the FDIC, and effectively ending Brooks's opportunity to withdraw or correct the pleading himself.

First, Brooks argues that the FDIC's motion to dismiss was improperly presented to the Court because it was filed on November 18, 2013, only one day before its presentment on November 19, 2013, as opposed to the two days as required by Local Rule 78.1. See N.D. Ill. L.R. 78.1 ("Except where a judge fixes a different time in accordance with this rule, the original of any motion shall be filed by 4:30 p.m. of the *second* business day preceding the date of presentment." (emphasis in original)). The Court, however, finds that Brooks waived his objection to this notice when he failed to appear for the status hearing which was previously scheduled for the same day, on November 19, 2013.

With respect to the safe harbor provision, Brooks argues that, because he was only given fifteen days within which to take action on the FDIC's letter, Rule 11 sanctions are precluded. Indeed, it is well established that "the twenty-one day safe harbor is not merely an empty formality." Divanne v. Krull Elec. Co., 200 F.3d 1020, 1026 (7th Cir. 1999). However, "[p]ostjudgment motions for sanctions are permissible so long as the moving party substantially complies with Rule 11's safe-harbor requirement." Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi., 649 F.3d 539, 553 (7th Cir. 2011).

In Methode Electronics, Inc. v. Adam Technologies, Inc., 371 F.3d 923 (7th Cir. 2004), the plaintiff filed a verified complaint on May 2, 2003. Three days later, the defendants sent the plaintiff a Rule 11 letter informing it that Illinois was not the proper forum for the action, and that if the plaintiff continued to pursue the action in Illinois, they would seek sanctions. Despite the plaintiff's receipt of the letter, it filed and pursued a motion for a temporary restraining order

before the district court in Illinois, which was set for hearing on May 7, 2003—only two days after the Rule 11 notice had been given and nineteen days shy of the twenty-one-day safe harbor provision. Although the court ultimately found that sanctions were appropriate pursuant to the district court's inherent authority, it noted that "there may be a basis in this case for finding substantial compliance with the rule, or that [the plaintiff] waived its right to the 21-day safe-harbor provision" by proceeding with the hearing on its motion for a temporary restraining order before the twenty-one-day period had ended. Id. at 927.

Similarly, here, the FDIC argues that it substantially complied with Rule 11 by attempting to contact Brooks as soon as it learned of the motion for default, and ultimately by providing Brooks with formal notice of his pleading deficiencies and its intent to move for sanctions if he failed to voluntarily dismiss the action. Additionally, the FDIC argues that it was impossible for it to comply with the full twenty-one-day period because the hearing on Brooks's motion for default judgment against it was set for only fifteen days after it sent the Rule 11 letter. Thus, in order to avoid a default judgment, the FDIC was forced to challenge the motion and move to dismiss Plaintiff's claim against it before the twenty-one-day period had elapsed. Notably, the FDIC gave Brooks as much time as possible to comply with its Rule 11 notice and waited only one day before the hearing on his motion for default to present its motion to dismiss.

Lastly, the FDIC argues that Brooks waived his right to the twenty-one-day safe harbor provision by continuing to pursue his motion for default judgment, which he knew was continued for further hearing on November 19, 2013—eight days before the end of the safe-harbor provision. Because Brooks left the FDIC with no other choice but to oppose his motion for default, and the FDIC nevertheless substantially complied with the Rule 11, the Court finds

that he waived his right to the full twenty-one-day safe harbor provision. Accordingly, the instant motion is properly before the Court.

## C. Motion for Sanctions

The FDIC argues, *inter alia*, that Brooks violated Rule 11 by pursuing and seeking judgment against it even though he knew or should have known that Plaintiff's TILA claim lacked subject matter jurisdiction, and that venue and service of process were improper.

### 1. Lack of Subject Matter Jurisdiction

First, the FDIC argues that Rule 11 sanctions are proper because Brooks knew that Plaintiff's TILA claim against it lacked subject matter jurisdiction, as she failed to exhaust her administrative remedies by first presenting the claim to the FDIC pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821. Despite the obvious lack of jurisdiction, Brooks moved for default judgment against the FDIC. In response, Brooks argues that "there continues to be wide debate among circuit courts as to the scope of the FDIC's administrative process when it comes to TILA rescission claims and claims that are made after the claims bar date passes." Resp. in Opp'n to FDIC Mot. for Sanctions 9. To the contrary, ten months before the instant case was dismissed and approximately eight months before Brooks filed a motion for default, the Seventh Circuit decided <u>Farnik v. Federal Deposit Insurance Corporation</u>, 707 F.3d 717, 722 (7th Cir. 2013), which removed any doubt that a plaintiff must first exhaust FIRREA's administrative remedies before filing suit against the FDIC as a receiver. In <u>Farnik</u>, the court stated that, "[u]nder [FIRREA], the FDIC has statutory authority to administer claims against a depository institution for which the FDIC is receiver," and "[c]ourts lack authority to review FIRREA claims relating to any act or omission of a failed bank or of the FDIC as receiver of a failed bank unless they are first subjected to FIRREA's

administrative claims process." Id. at 721-722 (internal quotation marks and citation omitted). Brooks was no doubt aware of the court's holding in Farnik, as he was the attorney for the plaintiff whose claim was found to lack subject matter jurisdiction for failure to exhaust the administrative process. Brooks was further aware that Plaintiff here, likewise failed to exhaust her administrative remedies under FIRREA before filing suit. The Court rejects Brooks's attempt to distinguish Farnik by arguing that it did not specifically involve a claim for TILA rescission. Farnik clearly states that the requirement for administrative exhaustion applies to all "claims 'relating to any act or omission' of a failed bank"—which necessarily includes a TILA action for rescission of a loan. Id. at 722 (quoting 12 U.S.C. § 1821(d)(13)(D)(ii)). Despite the obvious precedential authority to the contrary, Brooks maintains that "there is at least a colorable debate on the matter" and therefore, "no sanctions are appropriate." Resp. in Opp'n to FDIC Mot. for Sanctions, at p. 10. The Court disagrees. Brooks cannot in good faith argue that he was unaware, based on the controlling precedent from the Seventh Circuit, including a case with which he was personally involved eight months earlier, that Plaintiff's claim lacked subject matter jurisdiction. Nonetheless, he moved for judgment against the FDIC. Accordingly, Rule 11 sanctions are appropriate against Brooks for his unnecessary delay, needless increase in the cost of litigation for the FDIC, and for raising claims unwarranted by existing law.

### 2. Improper Venue

Second, the FDIC seeks sanctions against Brooks for improperly filing in this venue. In its November 20, 2013 Order, the Court found that venue in this district against the FDIC was improper. Pursuant to 12 U.S.C. § 1821, a plaintiff filing suit against the FDIC as a receiver is required to file "in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District

Court for the District of Columbia." 12 U.S.C. § 1821(d)(6)(A)(ii). In this case, as the Court previously stated in its dismissal Order, venue was only appropriate in the Middle District of Alabama or in the United States District Court for the District of Columbia. Despite the Court's finding, Brooks insists that venue in the Northern District of Illinois would also be proper pursuant to the general venue provisions contained in 28 U.S.C. § 1391. Brooks states:

> The FDIC seems to suggest that because another venue statute could have applied that the filing of this action in this venue is sanctionable. On the contrary, it would only mean that more than one venue might be acceptable. Therefore, even if this Court decided that another venue was more appropriate, there is nothing to suggest that the current venue could not have been allowed.

Resp. in Opp'n to FDIC Mot. for Sanctions 10. Brooks not only misstates the Court's Order, he blatantly misstates the law governing venue in this action. The Court did not find that the Middle District of Alabama or the United States District Court for the District of Columbia were *more appropriate* venues; rather they are the only venues available for the filing of Plaintiff's action against the FDIC. General venue statutes, such as the one relied upon by Brooks, are inapplicable when a statute contains a special venue statute superseding general venue. See Atl. Marine Contr. Co. v. United States Dist. Ct. for the W. Dist. of Tx., 134 S. Ct. 568, 577 n.2 (2013) ("Section 1391 governs venue generally, that is, in cases where a more specific venue provision does not apply." (internal quotation marks and citation omitted)). Such is the case here. "The interplay between subsection (d)(13)(D), the general jurisdiction-stripping provision, and subsection (d)(6)(A), the specific provision conferring jurisdiction over certain claims, is clear enough: No court has jurisdiction to entertain actions asserting claims against failed banks unless a provision in subsection (d) expressly provides for it." Miller v. Fed. Deposit Ins. Corp., 738 F.3d 836, 845 (7th Cir. 2013).

It is unacceptable that Brooks failed to use due diligence in researching the proper venue in this case before filing suit against the FDIC, regardless of whether this venue may have been proper as to the other defendants. Furthermore, it is vexatious, when presented with the binding case law from both the FDIC and the Court, that Brooks continues to press his view that venue in this district would be proper. It is not the responsibility of the FDIC or the Court to do counsel's job for him. Indeed, it is well established that:

> Rule 11 requires counsel to study the law before representing its contents to a federal court. An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating. Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under the Rule.

Thorton v. Wahl, 787 F.2d 1151, 1154 (7th Cir. 1986). Accordingly, sanctions here are appropriate.

### 3. Improper Service of Process

Finally, the FDIC argues that Brooks committed a Rule 11 violation by seeking judgment against it even though he knew, or should have known, that the FDIC was never properly served. In his executed Summons filed on December 2, 2011, at the status hearing on September 6, 2013, and again in his motion for default, Brooks represented to the Court that the FDIC had been served. This was not the case. On November 20, 2013, the Court quashed Brooks's purported service and dismissed Plaintiff's action pursuant to, *inter alia*, Rule 12(b)(5) for improper service of process. The Court found that Brooks never served or attempted to serve the United States, and that his service upon Louis J. DiPietro ("DiPietro") of the Chicago Regional Office of the FDIC was improper in accordance with Federal Rule of Civil Procedure 4 and 12 C.F.R. § 309.7(a). Pursuant to Rule 4, in order "[t]o serve a United States agency . . . a party must serve

the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency." Fed. R. Civ. P. 4(i)(2).

With respect to his neglect to serve the United States in accordance with Rule 4, Brooks provides the following excuse: "It does appear that Butler's counsel may have overlooked having a Summons served upon the United States, however, there was nothing overtly prejudicial in that action as the FDIC received actual notice of the suit." Resp. in Opp'n to FDIC Mot. for Sanctions 11-12. Brooks, however, did not merely "overlook" serving the United States; he overlooked the Federal Rules of Civil Procedure which require the United States to be served in addition to the agency.

Furthermore, in response to the FDIC's allegations and the Court's finding that Brooks improperly served the FDIC, he simply states that he "reasonably relied upon [the] FDIC's website as to who the appropriate person was to serve." Id. at 11. An attorney's reliance on a website instead of the Federal Rules of Civil Procedure is the type of behavior that is sanctionable under Rule 11 for failure to conduct a reasonable inquiry into the law prior to filing. See Bus. Guides, Inc. v. Chromatic Communs. Enters., Inc., 498 U.S. 533, 541-543 (1991) ("A party who signs a pleading or other paper without first conducting a reasonable inquiry shall be sanctioned. . . . A signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive."). However, Brooks's sanctionable conduct goes further. Not only did he rely on a website instead of Rule 4, he improperly represents the content of the subject website. Brooks states that he served DiPietro because he was listed as a registered agent for service of process in Chicago by the FDIC's website. Irrespective of the fact that Brooks should have served the registered agent in Alabama,

not Chicago, DiPietro's name does <u>not</u> appear as a registered agent for service of process in Chicago or otherwise. The copy of the FDIC's webpage that Brooks attaches, and on which he purportedly relied, is notably devoid of DiPietro's name as a registered agent. Once again, Brooks has left the job of factual and legal research to the Court and to the FDIC. Yet, even when faced with legal and factual evidence to the contrary, Brooks states:

> It would appear that service upon the FDIC was proper. Even though this Court may find that service of process was incomplete. There is no basis for sanctions. There can be no argument that the person served was knowingly authorized [sic] person to accept service. Thus, the only error that may have been made is which authorized person should have been selected. That does not rise to the level of vexatious litigation.

Resp. in Opp'n to FDIC Mot. for Sanctions 11. The Court disagrees. Brooks's refusal to acknowledge clear facts and well established law in this matter goes beyond vexatious litigation and is indeed worthy of sanctions under Rule 11.

### 4. Appropriate Sanctions

Rule 11 "is not a fee-shifting measure—it provides only that a court may impose an 'appropriate sanction' for a violation of Rule 11(b)." <u>Cooney</u>, 735 F.3d at 523 (quoting Fed. R. Civ. P. 11(c)(1)). Rule 11 "requires a court to ascertain the most modest sanction that will deter an offending attorney (and others) from further misconduct and then to set the sanction at that amount, regardless of the costs that the offending attorney's conduct has imposed on his opponents." <u>Tate v. Ancell</u>, Nos. 11-3252 & 12-2694, 2014 U.S. App. LEXIS 963, at *48-*49 (7th Cir. Jan. 17, 2014). However, "if imposed on motion and warranted for effective deterrence," a court may order the payment of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Indeed, although amendments to Rule 11 have "limited the amount of attorneys' fees that may be imposed as a sanction, contemplating the award of reasonable attorneys' fees and costs incurred as a direct

result of the violation," the Rule still "endorse[s] the use of attorneys' fees as a sanction." Divanne, 200 F.3d at 1030 (internal quotation marks and citation omitted).

"As a practical matter Rule 11 requires lawyers to evaluate their case in light of new developments . . . all of which must be adequately investigated and supported." Samuels v. Wilder, 906 F.2d 272, 275 (7th Cir. 1990). Rule 11 sanctions, however, cannot be imposed for an attorney's failure "to file a document dismissing the complaint." Id. "Rule 11 does not support sanctions for inactivity or belated activity." Id.

"Although Rule 11 does not require litigants to surrender in the face of defeat," id., the Seventh Circuit has interpreted 28 U.S.C. § 1927 as the appropriate source of authority "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable," Jolly Group, Ltd. v. Medline Indus., Inc., 435 F.3d 717, 720 (7th Cir. 2006) (internal quotation marks and citation omitted); see also Hess v. Reg-Ellen Mach. Tool Corp., 367 F. App'x 687, 691 (7th Cir. 2010). Under § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; see also Riddle & Assocs., P.C. v. Kelly, 414 F.3d 832, 835 (7th Cir. 2005). "Pressing a claim even after its emptiness became pellucid must be described as vexatious." Nisenbaum v. Milwaukee Cnty., 333 F.3d 804, 809 (7th Cir. 2003).

While the FDIC does not specifically mention § 1927 in the instant motion for sanctions, the potentially sanctionable conduct identified in the motion readily relates to § 1927. Specifically, the conduct sanctionable by § 1927 includes: (1) Brooks's failure to voluntarily dismiss Plaintiff's claim against the FDIC when the obvious deficiencies and applicable law were made known to him by the FDIC or otherwise; and (2) Brooks's attempt to rehash his

previously rejected claims in his response brief to the instant motion. Accordingly, the Court finds that sanctions are also appropriate pursuant to 28 U.S.C. § 1927.

Here, the FDIC seeks $29,976.70 in sanctions, an amount that would reimburse it for all attorney's fees, costs, and expenses that it has incurred since Brooks filed Plaintiff's action and moved for default judgment, up to and including the time that the FDIC spent in filing the instant motion for sanctions. The FDIC has attached a detailed description of its attorney's fees, costs, and expenses incurred, accompanied by a sworn statement.

The Court finds that Rule 11 and § 1927 sanctions in the amount of the FDIC's attorney's fees, costs, and expenses are appropriate in this case. Brooks needlessly prolonged the litigation and increased the costs associated therewith through his failure to make a reasonable inquiry into the law and facts after the FDIC requested that he voluntarily dismiss the claim against it, through his baseless pursuit of default judgment against the FDIC, and through his continued reliance on frivolous arguments in response to the instant motion. Accordingly, Brooks is ordered to pay sanctions in the amount of $24,586.00, which includes all attorney's fees, costs, and expenses that the FDIC incurred in having to oppose the motion for default and in filing the instant motion for sanctions.

## III. CONCLUSION

For the foregoing reasons, the FDIC's motion for sanctions is granted. Brooks is ordered to pay sanctions in the amount of $24,586.00.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: February 28, 2014